UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELLIOT R. SCHROEDER,

             Plaintiff,

v.                                          Case No. 24-cv-0857-bhl

LELAND DUDEK
Acting Commissioner of Social Security,

             Defendant.

# DECISION AND ORDER

Plaintiff Elliot R. Schroeder seeks review of the final decision of the Acting Commissioner of the Social Security Administration, denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Schroder applied for DIB and SSI on June 25, 2021, alleging a disability onset date of April 1, 2021. (ECF No. 8-1 at 64, 72, 257.) After his claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id.* at 20.) The ALJ held a hearing on November 2, 2023, and denied Schroeder's disability claim, concluding that Schroeder was not disabled. The ALJ explained that Schroeder retained the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels, but with nonexertional limitations, and could perform a significant number of jobs in the national economy. (*Id.* at 20–31.) On May 7, 2024, the Appeals Council denied Schroeder's request for review of that decision. (*Id.* at 6–8.) Schroder now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Schroeder was born on August 19, 1976. (*Id.* at 64.) He claims that he has anxiety, depression, panic attacks, and physical conditions that have disabled him since April 2021. (*Id.* at 64, 261.) He also reports having previously worked as a dishwasher at a restaurant, a grout

operator for a sewer/waste company, and in a shipping/receiving position at a department store. (*Id.* at 262.)

At his hearing before the ALJ, Schroeder testified that he lives with his girlfriend and owns his own home. (*Id.* at 44.) He explained that he is uncomfortable going outside and will go for multiple days without leaving his home due to his anxiety. He reported that he will sometimes walk into a room and not remember why he is there and is left drained by his medications. (*Id.* at 44, 48.) He further testified that when he goes shopping with his girlfriend he stays in the car and that he has "bad panic attacks" "three times a month, four times a month, once a week." (*Id.* at 46, 57–58.) As for daily activities, Schroeder testified that he helps fold the laundry, vacuum, and put away the dishes. (*Id.* at 51.)

Schroeder testified that he started having panic attacks in 2018 and then lost his job as a grout operator at Visio Sewer, where he had worked since 2006. (*Id.* at 42, 46.) He later worked as a dishwasher at Kam's Thistle and Shamrock but became sick from COVID at which point his "mental health went down the tubes." (*Id.* at 46–47.) After that, Schroeder was employed at Mills Fleet Farm as a forklift driver from 2020 to 2021. (*Id.* at 47.)

Schroeder attended an intensive outpatient program in 2018 and has been treated by a psychiatrist. (*Id.* at 541, 694.) In 2020, Schroeder met with psychiatrist Lisa Wochos, M.D., and reported his mood as "good, happy," his anxiety level as good, and indicated he was working at Fleet Farm. (*Id.* at 359.) Wochos diagnosed Schroeder with generalized anxiety disorder, panic disorder, and mood disorder. (*Id.* at 360.) In March 2021, shortly before his alleged onset date, Schroeder reported that he was a "little bit irritable" and that his anxiety was "ok" but "it spike[d] up once a week." (*Id.* at 354.) A mental status exam revealed normal findings. (*Id.* at 355.)

In July 2021, Schroder reported he was "not good . . . sad," rated his anxiety as "high," and stated he lost his job at Fleet Farm in March. (*Id.* at 495–96.) He further reported one or two panic attacks since the prior session. (*Id.* at 496.) A mental status exam again revealed normal findings other than that his affect was "[b]lunted, constricted range, mildly dysphoric." (*Id.* at 496–97.) Schroeder continued to be treated by Dr. Wochos throughout 2022, but none of her treatment notes are in the record. (ECF No. 11 at 3.)

From November 7 to December 13, 2022, Schroeder attended an intensive outpatient program at Rogers Behavioral Health. (ECF No. 8-1 at 718–37.) On admission, Schroeder reported anxiety and memory problems, acknowledged drinking three to four drinks two to three

times per week and using a significant amount of marijuana. (*Id.* at 723.) He also reported to the social worker that he was working with an attorney to get disability benefits. (*Id.*) His mental status exam was unremarkable. (*Id.* at 724.) Upon intake, he was diagnosed with unspecified anxiety disorder, continuous marijuana use, and nicotine addiction. (*Id.* at 726.) During the course of the program, Schroeder was also diagnosed with post-traumatic stress disorder. (*Id.* at 730.)

In September 2023, Schroeder returned to Rogers Behavioral Health seeking help for his anxiety. (*Id.* at 1105.) As of his discharge on October 13, 2023, his mental status findings were unremarkable. (*Id.* at 1107–08.) He was diagnosed with generalized anxiety disorder, unspecified mood disorder, chronic post-traumatic stress disorder, and mild cannabis use disorder. (*Id.* at 1108.)

In assessing this evidence and Schroeder's claim for benefits, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. § 404.1520(a) and 416.920(a). (*Id.* at 20–31.) At step one, the ALJ concluded that Schroeder has not engaged in substantial gainful activity since the alleged onset date of April 1, 2021. (*Id.* at 22.) At step two, the ALJ found that Schroeder had severe impairments of depression and anxiety. (*Id.*) At step three, the ALJ found that neither of those impairments met or equaled any of the agency's listed impairments. (*Id.* at 23.) The ALJ then found that Schroder had the RFC for "a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember and carry out short and simple work instructions, exercise simple workplace judgments, perform routine work involving occasional decision-making and occasional changes with brief and superficial interaction with [the] general public." (*Id.* at 25–29.) At step four, the ALJ found Schroeder could not perform his past relevant work. (*Id.* at 29–30.) Finally, at step five, the ALJ found there were a significant number of jobs in the national economy that Schroeder could perform which were identified by the vocational expert, including wall cleaner, hand packager, and floor waxer. (*Id.* at 30–31.) The ALJ therefore determined that Schroder was not disabled.

**LEGAL STANDARD**

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (citations omitted). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Schroeder challenges two aspects of the ALJ's decision. He first claims that the ALJ's analysis of his subjective symptoms provided no meaningful assessment. He also argues that the ALJ failed to explain how he reached his RFC determination in violation of Social Security Ruling (SSR) 96-8p. (ECF No. 11 at 7–17.) Neither challenge supports remand, and the Commissioner's decision will, therefore, be affirmed.

**I.     The ALJ's Assessment of Plaintiff's Subjective Symptoms Was Not Patently Wrong.**

When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of his . . . physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to

perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

In rejecting Schroeder's claim regarding the limiting effect of his symptoms, the ALJ found that Schroeder's subjective complaints were not fully consistent with the medical and other evidence. (ECF No. 8-1 at 29.) Schroeder argues that this determination lacked a meaningful assessment and offers a series of criticisms of the ALJ's analysis. (ECF No. 11 at 7–8.) He first takes issue with the ALJ's determination that Schroeder's allegations were not fully consistent with the evidence. He complains that the ALJ found that he "maintains functioning," but argues that this finding is "vague" and not supported by the evidence. (*Id.* at 8–9 citing ECF 8-1 at 25–26.) Schroeder next asserts that the ALJ offered only a statement of facts and not the required explanation of the consistency of the claimant's allegations with the evidence. (ECF No. 11 at 9.) He also takes issue with the ALJ's finding that Schroeder's described improvement in treatment conflicted with the extreme symptoms he described. (*Id.* at 12–13.) Schroeder further contends that while it is appropriate for an ALJ to consider the benefit of treatment or a claimant's improvement, improvement is relative and a person who improves in treatment may not be improved to a level that permits competitive, full-time work. (*Id.*) Finally, Schroeder argues that the ALJ failed to construct the logical bridge from his activities of daily living that included folding clothes and putting away the dishes to discounting his symptoms as described during the hearing. (*Id.* at 13–15.)

The Court disagrees that the ALJ's assessment of Schroeder's subjective complaints was lacking. To the contrary, the ALJ provided a thorough evaluation of the medical evidence. The ALJ pointed out that a psychiatric evaluation conducted in November of 2022 "notably" showed that Schroeder was able to track conversation and answer questions appropriately and that, as of November 23, 2022, he felt happy, denied depression, and reported minimal anxiety. (ECF No. 8-1 at 27.) The ALJ also cited a January 24, 2023 neuropsychological evaluation at which Schroeder maintained appropriate eye contact, was cooperative and easily established rapport. (*Id.*) In August 2023, less than three months before the hearing, Schroeder reported to a psychiatrist that his anxiety level was "good" and manageable and he denied any panic attacks or symptoms of psychosis. (*Id.* at 28.) The ALJ further discussed that, upon discharge from Rogers

Behavioral Health intensive outpatient program in September 2023, treatment notes revealed that Schroeder's mental status examination was normal, he was able to engage easily in conversation, he maintained appropriate eye contact, his mood was neutral, and he "could perform activities of daily living consistently, and function in society without significant support." (ECF No. 8-1 at 28–29 (citing *id.* at 1107–08).) In the discharge planning documents, Schroeder was noted to have participated well in groups, provided feedback to peers, applied coping skills, and remained active in treatment. (*Id.* at 1107.) This evaluation of Schroeder took place even closer in time to the November 2023 hearing. The Court can adequately trace the ALJ's reasons for discounting Schroeder's testimony that he could not leave his home for multiple days and, while home, his daily activities were limited to folding clothes, vacuuming and putting away dishes.

The ALJ also relied on two state agency consultants, Robert Barthell, Psy.D, and Henry Schniewind, both of whom disagreed with Schroeder's account of his mental functioning and opined that he would be able to focus to complete simple tasks requiring two steps. (ECF No. 8-1 at 29.) These experts acknowledged that Schroeder would have increased difficulty with more complex tasks but opined that he remained suited for work that did not require changing tasks from day to day and that had a fairly regular set of job duties and expectations. (*Id.* (citing *id.* at 69–70, 76–77, 88–89, 99–100).) The ALJ noted that the opined restrictions were internally supported by intensive outpatient treatment evidence and clinical findings noting a "blunted, mildly dysphoric with constricted range of affect." (*Id.* (citing *id.* at 346–47).)

None of Schroeder's arguments, either individually or in concert, warrant remand. The ALJ cited Schroeder's own reports that prescribed medication was helpful, as was voluntary intensive outpatient treatment. (*Id.*); *see also Tremper v. Kijakazi*, No. 22-CV-98-SCD, 2023 WL 2301519, at *7 (E.D. Wis. Mar. 1, 2023) (noting ALJ appropriately considered claimant's reports of improvement from medication). Schroeder's own statements during treatment were not consistent with disabling mental health symptoms. "[A]n ALJ need not discuss every detail related to every factor" in assessing a claimant's subjective symptoms. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Schroeder has not shown that the ALJ's evaluation of his symptoms lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

## II. The ALJ's RFC Determination Was Supported By Substantial Evidence.

The ALJ's RFC determination limited Schroeder to completing short and simple work instructions, making simple judgments, and doing routine work with occasional changes. (ECF

No. 8-1 at 25.) The ALJ based the mental RFC findings on the assessments of the state-agency psychologists who opined that Schroeder would be able to focus to complete simple tasks requiring two steps and was suitable for work that did not require changing tasks from day to day but rather had a fairly regular set of job duties. (*Id.* at 29.) The ALJ also included more limitations on interacting with others than the state-agency psychologists assessed and limited Schroeder to only brief and superficial interaction with the public, "[g]iven evidence of reactive, agitated, irritable, and anxious mood and affect." (*Id.* at 25, 29.) And as previously noted, the ALJ's assessment finding Schroeder's subjective complaints unpersuasive was not patently wrong.

The ALJ assessed the state-agency opinions and adopted an RFC assessment that was more restrictive than any medical source. "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *see also Tutwiler*, 87 F.4th at 860 ("The lack of an opposing medical opinion makes it difficult . . . to warrant reversal."); *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016) ("[T]he ALJ [is] only required to incorporate limitations that she [finds] supported by the evidence."). As previously noted, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the bases for his conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

Schroeder argues that the ALJ failed to comply with SSR 96-8p and explain how he reached his RFC determination. (ECF No. 11 at 15.) The record refutes this argument. The ALJ relied on the assessments of state-agency psychologists as well as the ALJ's evaluation of Schroeder's subjective complaints. (ECF No. 8-1 at 29.) The ALJ also engaged in a through discussion of Schroeder's treatment at Rogers Behavioral Health and noted that when Schroeder was discharged on October 13, 2023, the mental status examination was normal and Schroeder engaged easily in conversation with appropriate eye contact, neutral mood, and no hallucinations or delusions. (*Id.* at 28.) As the Acting Commissioner notes, the Seventh Circuit has clarified that SSR 96-8p does not require the ALJ to engage in a function-by-function evaluation of the RFC finding. (ECF No. 19 at 11 (citing *Jeske v. Saul*, 955 F.3d 583, 595–96 (7th Cir. 2020), and other case law).) The ALJ's well-reasoned decision explains why Schroeder was not disabled and Schroeder presents no reason for this Court to second-guess or disturb that decision.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 7, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
